1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER NATHANIEL                    No.  2:20-cv-2261 KJM AC P
     WASHINGTON,
12
                      Plaintiff,
13
            v.                                ORDER AND FINDINGS &
14                                            RECOMMENDATIONS
     RALPH DIAZ, et al.,
15
                      Defendants.
16

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Currently before the court are defendants' motion for summary judgment (ECF

19   No. 126) and plaintiff's various motions for miscellaneous relief (ECF Nos. 137-141).

20   I.     Procedural History

21          This case proceeds on plaintiff's fourth amended complaint.  ECF No. 54.  On screening,

22   the court found that plaintiff had stated cognizable claims for failure to protect and retaliation

23   against defendants Emerson and Coder,[1] and his claims against defendant Meza were dismissed

24   without leave to amend.  ECF Nos. 76, 84.  After the close of discovery, defendants moved for

25   summary judgment (ECF No. 126) which plaintiff opposes (ECF No. 131).

26   ////

27

28   ---
     [1]  Coder was incorrectly identified as "Codes" in the complaint.  ECF No. 30 at 2.

                                                  1

1   Plaintiff has also moved for reconsideration of the order denying his motion for a

2   preliminary injunction (ECF No. 137), trial by consent and entry of judgment in his favor (ECF

3   No. 138, 139), leave to file a motion for summary judgment (ECF No. 140), and a jury trial (ECF

4   No. 141).

5       II.    Plaintiff's Allegations

6       The complaint alleges that plaintiff's First and Eighth Amendment rights were violated by

7   defendants when they verbally threatened him from November 2019 through December 31, 2019,

8   saying he needed to die and they would make sure he died because he was a snitch on staff.  Id. at

9   4; ECF. No. 54 at 4-5, 9.  On January 10, 2020, plaintiff was assaulted by three other inmates, and

10  he asserts that the assault was caused by staff because they told other inmates that he snitched on

11  correctional staff.  ECF No. 4 at 4-5, 11.

12      III.   Motion for Summary Judgment

13          A.    Defendants' Arguments

14      Defendants move for summary judgment on plaintiff's retaliation claim on the grounds

15  that plaintiff cannot establish either defendant was aware of the lawsuit alleged as plaintiff's

16  protected conduct, that either threatened him, or that telling other inmates that he "snitches on

17  staff" would put him in danger.  ECF No. 126-1 at 10-12.  They argue that they are entitled to

18  summary judgement on plaintiff's failure to protect claim on the grounds that plaintiff does not

19  allege any facts that show that defendants would have known that telling other inmates that

20  plaintiff snitched on staff would put him in danger.  Id. at 12-14.  Alternatively, defendants argue

21  that they are entitled to qualified immunity on both claims.  Id. at 15-16.

22          B.    Plaintiff's Response

23      At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

24  Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely

25  disputed must support the assertion by . . . citing to particular parts of materials in the record."

26  Plaintiff has also failed to file a separate document in response to defendants' statement of

27  undisputed facts that identifies which facts are admitted and which are disputed, as required by

28  Local Rule 260(b), though his response to defendant's motion has partially complied with this

2

1    requirement.  See ECF No. 131 at 2-6.

2          "Pro se litigants must follow the same rules of procedure that govern other litigants."

3    King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

4    Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

5    established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

6    *se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

7    F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

8    "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

9    upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

10   Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

11   internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

12   "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

13   omitted).

14          Accordingly, the court considers the record before it in its entirety despite plaintiff's

15   failure to be in strict compliance with the applicable rules.  However, only those assertions in the

16   opposition which have evidentiary support in the record will be considered.  Plaintiff opposes the

17   motion for summary judgment and argues that defendants have misrepresented facts and did in

18   fact retaliate against him and fail to protect him.  ECF No. 131.

19          Plaintiff also argues that the motion for summary judgment should be stricken under

20   Federal Rule of Civil Procedure 12(f).  Id. at 1, 7.  However, Rule 12(f) relates to striking

21   pleadings and does not apply to motions for summary judgment and the motion will be denied.

22   See Worldwide Subsidy Grp., LLC v. Worldwide Pants Inc., 729 F. App'x 625, 626 (9th Cir.

23   2018) (Rule 12(f) inapplicable to motion for summary judgment).  Plaintiff has also filed a

24   motion leave to file a motion for summary judgment and requests summary judgement be entered

25   in his favor.  ECF No. 140.  The deadline to file motions for summary judgment expired on April

26   26, 2024.  ECF No. 98 at 6.  Plaintiff's motion, filed approximately nine months after the

27   expiration of that deadline, offers no explanation for its untimeliness or justification for allowing

28   him to file an untimely motion.  ECF No. 140.  To the extent the motion is intended as a motion

1  for summary judgment, it should be denied because plaintiff makes only conclusory assertions

2  that he is entitled to summary judgment; fails to comply with any of the formal requirements of a

3  motion for summary judgment, such as providing a statement of facts; and does not cite to or

4  attach any evidence to support his claim that he is entitled to summary judgment.

5        C.      <u>Legal Standards for Summary Judgment</u>

6       Summary judgment is appropriate when the moving party "shows that there is no genuine

7  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

8  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

9  of proving the absence of a genuine issue of material fact."  <u>In re Oracle Corp. Sec. Litig.</u>, 627

10  F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  The

11  moving party may accomplish this by "citing to particular parts of materials in the record,

12  including depositions, documents, electronically stored information, affidavits or declarations,

13  stipulations (including those made for purposes of the motion only), admissions, interrogatory

14  answers, or other materials" or by showing that such materials "do not establish the absence or

15  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

16  support the fact."  Fed. R. Civ. P. 56(c)(1).

17       "Where the non-moving party bears the burden of proof at trial, the moving party need

18  only prove that there is an absence of evidence to support the non-moving party's case."  <u>Oracle</u>

19  <u>Corp.</u>, 627 F.3d at 387 (citing <u>Celotex</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56(c)(1)(B).

20  Indeed, summary judgment should be entered, "after adequate time for discovery and upon

21  motion, against a party who fails to make a showing sufficient to establish the existence of an

22  element essential to that party's case, and on which that party will bear the burden of proof at

23  trial."  <u>Celotex</u>, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

24  of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u> at 323.  In such

25  a circumstance, summary judgment should "be granted so long as whatever is before the district

26  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

27  56(c), is satisfied."  <u>Id.</u>

28  ////

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

5

1    Defendants simultaneously served plaintiff with notice of the requirements for opposing a

2    motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

3    summary judgment.  ECF No. 126-7; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

4    1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

5    Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

6        D.    Undisputed Material Facts

7    Plaintiff did not separately and individually respond to defendants' statement of

8    undisputed facts and the facts are therefore deemed undisputed except as otherwise discussed.[2]

9    At all times relevant to the complaint, plaintiff was a prisoner in the custody of the

10    California Department of Corrections and Rehabilitation (CDCR) at Mule Creek State Prison

11    (MCSP) in Facility A, which was a designated Sensitive Needs Yard (SNY) at the time.

12    Defendants' Undisputed Statement of Facts (ECF No. 126-8) (DSUF) ¶¶ 1-3.

13    On October 31, 2019, plaintiff settled a case against correctional officers at High Desert

14    State Prison (HDSP).  DSUF ¶¶ 18-19.[3]  Plaintiff alleges that beginning in November 2019

15    through December 31, 2019, defendants threatened him, making comments like "you are a snitch

16    on staff so do not be surprised when you die, you are going to die we will make sure that you

17    die." ECF No. 54 at 4-5, 9.  He further alleges that on December 31, 2019, another inmate,[4]

18    whose declaration he attaches, witnessed defendants saying that plaintiff "needs to be murdered

19    he snitches on correction staff in court!" in front of other inmates.  Id. at 10-11.  Defendants assert

20    that Emerson did not work on December 31, 2019, and she and Coder worked in different

---

21    [2]  Although plaintiff states that he disputes all facts, and references some specifically, his disputes
22    and objections are general and without citations to any evidence.  ECF No. 131 at 2 (¶¶ 4-6), 3
     (¶¶ 9-16), 4 (¶¶17-22), 5 (¶¶ 23-30), 6 (objecting to all thirty facts generally).
23    [3]  Plaintiff objects to DSUF ¶¶ 18-19 as irrelevant, but admits he settled his case on October 31,
     2019.  ECF No. 131 at 4.
24    [4] Defendants assert that they were unable to identify any current or former inmate assigned
     CDCR #A162801 or with a name similar to "Brittney Cripson" (DSUF ¶ 11), to which plaintiff
25    responds that the inmate's name is "Brittney Gipson," and he was assigned CDCR #AK-2801
     (ECF No. 131 at 3).  Defendants' misreading of the inmate's name and number does not appear to
26    be in bad faith, given that portions of the name and number were not clearly written.  See ECF
     No. 54 at 11.  At this stage, the court presumes defendants were unable to identify the inmate due
27    to their misreading of his name and number and considers the declaration to the extent it would
     any other declaration submitted in support of a motion for summary judgment.
28

6

1   positions at MCSP that did not overlap.[5]  DSUF ¶¶ 10, 12-15.  Neither defendant communicated

2   regularly with the other, nor did they socialize outside of work.  DSUF ¶ 16.  Defendants also

3   assert that they did not have any knowledge of the settlement, they did not communicate with any

4   officers employed at HDSP, and information about the settlement would not have been included

5   in plaintiff's files at MCSP.  DSUF ¶ 21.  Plaintiff asserts that defendants had knowledge of the

6   settlement because the settlement conference took place at MCSP.  ECF No. 131 at 4.

7          Plaintiff alleges he was attacked in the evening of January 10, 2020, while working in the

8   dining hall, and that the attack occurred as a result of defendants' threats.  ECF No. 54 at 4-5.  He

9   was seen by medical staff at 9:41 that evening for an injury to the left side of his jaw, which he

10  told nurses was caused by injuring himself using exercise equipment.  DSUF ¶ 26.[6]  Three days

11  later, plaintiff told correctional officers that instead he had been attacked at the dining hall by one

12  of his coworkers.  DSUF ¶ 27.  In his opposition, plaintiff asserts that his attackers made

13  reference to being part of a gang that formed to protect gay inmates and retaliate against inmates

14  who assaulted them.  ECF No. 131 at 4.

15         As an SNY, Facility A was reserved for and made up of inmates who are at a greater risk

16  of assault by gangs or other inmates within the prison general population because of their status

17  as sexual offenders or former prison gang members who had been informants on gang activity.

18  DSUF ¶¶ 4-5.[7]  Defendants were unaware that plaintiff would be at a greater risk of harm if other

19

20  [5]  Plaintiff disputes DSUF ¶¶ 9-16.  ECF No. 131 at 3.  Relevant to DSUF ¶¶ 10 and 12-16, he
    asserts that staff at the prison "swap" positions with other staff members on and off the record,
21  including swaps for locations, positions, and days.  ECF No. 131 at 3-4.  However, he does not
    cite to any evidence supporting this proposition or demonstrate that he has personal knowledge
22  that would make him competent to testify as to whether any changes in shifts or position were
    done off the record.  DSUF ¶¶ 10 and 12-16 are therefore deemed undisputed.
23  [6]  Plaintiff objects to DSUF ¶¶ 23-30 on the grounds that they are immaterial, and that medical
    staff made false statements about his injury and that his jaw was actually broken.  ECF No. 131 at
24  5-6.  There is no dispute that plaintiff reported an injury on January 10, 2020, and the level of
    injury is immaterial to resolution of this motion.  Plaintiff's objections do not otherwise address
25  the content of the statements and therefore do not create a dispute of fact and DSUF ¶¶ 23-30 are
    otherwise deemed undisputed and will be considered to the extent they are material to resolution
26  of the motion.
27  [7]  Plaintiff argues that DSUF ¶¶ 4-6 are irrelevant but does not otherwise object to the contents of
    the statements other than to state that defendants could not know the state of mind of the entire
28  (continued)

1   inmates in the SNY learned he had settled an action accusing officers of misconduct, as they had

2   never heard of an inmate being attacked for this reason, and believed, if anything, it would help

3   an inmate's reputation.  DSUF ¶ 22.[8]

4           E.    Discussion

5               i.    Retaliation

6           Within the prison context, a viable claim of First Amendment
        retaliation entails five basic elements: (1) an assertion that a state
7        actor took some adverse action against an inmate (2) because of (3)
        that prisoner's protected conduct, and that such action (4) chilled the
8        inmate's exercise of his First Amendment rights, and (5) the action
        did not reasonably advance a legitimate correctional goal.
9

10   Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations and footnote omitted).  "To

11   prevail on a retaliation claim, a plaintiff must show that his protected conduct was 'the

12   "substantial" or "motivating" factor behind the defendant's conduct.'"  Brodheim v. Cry, 584

13   F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314

14   (9th Cir. 1989)).

15           "To raise a triable issue as to motive, [a plaintiff] must offer 'either direct evidence of

16   retaliatory motive or at least one of three general types of circumstantial evidence [of that

17   motive].'"  McCollum v. Cal. Dep't Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (second

18   alteration in original) (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)).

19   Circumstantial evidence of motive may include (1) the proximity in time between the protected

20   conduct and the alleged retaliation; (2) the defendant's expressed opposition to the protected

21   conduct; and (3) other evidence showing that the defendant's reasons for the challenged action

22   were false or pretextual.  Id. (quoting Allen, 283 F.3d at 1077).  "[M]ere speculation that

23   defendants acted out of retaliation is not sufficient."  Wood v. Yordy, 753 F.3d 899, 905 (9th Cir.

24   2014) (citations omitted).

25   _____

26   inmate population.  ECF No. 131 at 2.  Since these statements relate to the composition of A
    yard's prisoner population and defendants' beliefs, plaintiff's objection does not create a dispute
27   of fact and DSUF ¶¶ 4-6 are deemed admitted.
    [8]  Plaintiff objects to DSUF ¶ 22 as immaterial but does not appear to dispute the contents of
28   DSUF ¶ 22 (ECF No. 131 at 4) and it is therefore deemed admitted.

1    Defendants argue that plaintiff cannot establish they retaliated against him, for two

2    reasons.  First, he cannot show that either of them were aware of plaintiff's lawsuit against staff at

3    HDSP.  ECF No. 126-1 at 11.  Second, he cannot show that they took adverse actions against

4    him.  Id. at 11-12.

5    With respect to the first argument, defendants assert that they did not know about and

6    could not have known about the lawsuit because evidence of the settlement would not have been

7    in plaintiff's file and they did not know officers from HDSP.  Id. at 11.  However, plaintiff asserts

8    that the settlement conference was held at MCSP and that defendants verbally threatened him

9    between November 2019 and December 31, 2019, calling him a "snitch on staff."  ECF No. 54 at

10    4-5, 9; ECF No. 131 at 4.  Plaintiff has also submitted a declaration from another inmate stating

11    that on December 31, 2019, he overheard defendants saying that plaintiff "needs to be murdered

12    because he snitches on correction staff in court!"  ECF No. 54 at 11.  Even if the court discounts

13    the declaration because Emerson was not working on December 31, 2019, plaintiff's own

14    assertion that defendants threatened him and called him a "snitch on staff" during the two-month

15    period immediately following his settlement conference is enough to create an issue of fact as to

16    whether defendants were aware of plaintiff's lawsuit and settlement.  See Carr v. Stelzer, 733 F.

17    App'x 361, 363-64 (9th Cir. 2018) (genuine issue of material fact where defendants claimed they

18    were unaware of plaintiff's correspondence with ACLU and plaintiff's verified complaint, along

19    with affidavits from other inmates, stated defendants threatened to remove protective custody

20    status if plaintiff continued to correspond with ACLU).

21    Defendants' second argument, that plaintiff cannot establish that they took adverse action

22    against him, is made up of two parts.  First, they assert that he cannot show an adverse action

23    because Emerson was not working on December 31, 2019, and they were unable to identify the

24    inmate who signed the declaration submitted by plaintiff.  ECF No. 126-1 at 11.  However, any

25    disputes regarding whether Emerson worked on December 31, 2019, or who wrote the declaration

26    are ultimately immaterial.  Plaintiff has alleged that defendants directly threatened him with death

27    and called him a "snitch on staff" during the two months following the settlement conference.

28    These allegations, made in plaintiff's verified complaint, are sufficient to establish an adverse

1    action by defendants.  See Brodheim, 584 F.3d at 1270 ("[T]he mere *threat* of harm can be an

2    adverse action, regardless of whether it is carried out, because the threat itself can have a chilling

3    effect.").  Accordingly, the undersigned concludes that defendants are not entitled to summary

4    judgment on the retaliation claim to the extent it is premised on retaliatory threats.

5           Defendants also argue that calling plaintiff a "snitch on staff" was not an adverse action

6    because no reasonable officer could conclude that plaintiff would be at risk of assault by other

7    inmates because he snitched on law enforcement, and they had never heard of an inmate facing an

8    increased risk of assault for this reason.[9]  ECF No. 126-1 at 11-12.  They further assert that while

9    an inmate usually faces an increased risk for snitching on *other inmates*, plaintiff was housed on

10   an SNY, which housed numerous inmates who had left their prison gangs and provided

11   information on the gangs to law enforcement.  Id.  In other words, plaintiff was housed on a yard

12   comprised of "snitches."  There is no evidence indicating that the inmates who assaulted plaintiff

13   did so because of defendants' statements that plaintiff was a "snitch on staff."  Furthermore,

14   plaintiff does not dispute either of defendants' assertions or provide any evidence that being

15   called a "snitch on staff," particularly when housed on an SNY, would put him at risk of assault

16   by other inmates and therefore fails to demonstrate that such statements would constitute an

17   adverse action.[10]  Defendants are therefore entitled to summary judgment on the retaliation claim

18   to the extent it is premised on the alleged adverse action of calling plaintiff a "snitch on staff."

19          Accordingly, defendants' motion for summary judgment should be granted in part and

20   denied in part as to the retaliation claim, which should be narrowed to allegedly retaliatory threats

21   of harm.

22   ////

23

24   _____

     [9]  The court notes that while plaintiff submits the declaration of another inmate who states he

25   witnessed defendants say that plaintiff "needs to be murdered he snitches on correction staff in
     court!" in front of other inmates, there are no allegations that defendants arranged to have other

26   inmates assault him.

     [10]  Considering the vast number of inmates who routinely file lawsuits against correctional

27   officers in this and other courts, and who in this court's experience often openly receive help from
     other inmates, it seems rather improbable that being labeled a "snitch on staff" would put a

28   prisoner at any kind of risk from other inmates.

1          ii.  Failure to Protect

2          Prison officials have an obligation to protect prisoners from injury by other prisoners.

3  Farmer v. Brennan, 511 U.S. 825, 833-34 (1994).  The Eighth Amendment is only violated,

4  however, when a defendant acts with a sufficiently culpable state of mind.  Wilson v. Seiter, 501

5  U.S. 294, 297 (1991).  Accordingly, to state an Eighth Amendment claim for failure to protect, a

6  plaintiff must plead facts demonstrating that the defendant knew of and disregarded an excessive

7  risk to inmate health or safety.  Farmer, 511 U.S. at 837.  "[T]he official must both be aware of

8  facts from which the inference could be drawn that a substantial risk of serious harm exists, and

9  he must also draw the inference."  Id.  Negligent failure to protect an inmate from harm is not

10  actionable under § 1983; even civil recklessness—failure "to act in the face of an unjustifiably

11  high risk of harm that is either known or so obvious that it should be known"—is insufficient to

12  establish an Eighth Amendment claim.  Id. at 835-37.

13          Defendants argue that they were not deliberately indifferent to a risk of harm created by

14  telling inmates plaintiff was a "snitch on staff" or that he was falsely accused of sexual assault by

15  a former cellmate.  ECF No. 126-1 at 12-15.  As addressed above, plaintiff has not produced

16  evidence showing that being called a "snitch on staff" would put him at increased risk of assault

17  by other inmates.  Accordingly, even if defendants labeled plaintiff as such in front of other

18  inmates, he cannot show that their conduct was deliberately indifferent to his safety or that they

19  knew such comments would put him at risk.  With respect to the argument about labeling plaintiff

20  a sex offender, though the original complaint alleged that defendants endangered plaintiff by

21  calling him a sex offender in addition to being a "snitch on staff" (ECF No. 1 at 2), the operative

22  complaint does not make a similar allegation and that claim is not before the court.[11]  The motion

23  _____

24  [11]  Even if this claim were before the court, summary judgment would be appropriate.  Although
plaintiff argues in his opposition that the inmates who assaulted him were part of a gang formed

25  to protect gay inmates and retaliate against inmates who assault them (ECF No. 131 at 4),
implying that the assault was motivated by the accusation he sexually assaulted a former cellmate,

26  plaintiff offers no evidence demonstrating that defendants were responsible for spreading such
information.  At most, the original complaint alleges that they called him a sex offender (ECF No.

27  1 at 2), but it is undisputed that plaintiff was being housed on a yard specifically intended to
house sex offenders (DSUF ¶ 4), and there are no allegations that defendants told other inmates

28  (continued)

1 | for summary judgment should therefore be granted as to plaintiff's deliberate indifference claim.

2 | iii.  Qualified Immunity

3 | "[G]overnment officials performing discretionary functions generally are shielded from

4 | liability for civil damages insofar as their conduct does not violate clearly established statutory or

5 | constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457

6 | U.S. 800, 818 (1982) (citations omitted).  In analyzing a qualified immunity defense, the court

7 | must consider the following: (1) whether the alleged facts, taken in the light most favorable to the

8 | plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2)

9 | whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533

10 | U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009)

11 | (overruling Saucier's requirement that the two prongs be decided sequentially).

12 | The facts taken in the light most favorable to plaintiff show that defendants did not violate

13 | his constitutional rights by telling other inmates that he was a "snitch on staff."  It is therefore

14 | unnecessary for the court to address defendants' qualified immunity arguments as to the

15 | retaliation and failure to protect claims premised on this allegation and the court declines to do so.

16 | However, as discussed above, there are material disputes of fact as to the claim that defendants

17 | threated plaintiff and routinely harassed him over a two-month period because of a lawsuit he

18 | filed against other officers.  Taking the evidence in the light most favorable to plaintiff,

19 | defendants knew he had settled a lawsuit against other officers and over a two-month period

20 | routinely harassed and threatened him, telling him he should die and that they would make sure

21 | he died, thereby violating his First Amendment rights.  Under this version of facts, defendants

22 | could not have reasonably believed that their conduct was permissible.  See Rhodes, 408 F.3d at

23 | 567 (2005) (prisoners have a First Amendment right to pursue civil rights litigation and to be free

24 | from retaliation for doing so).  These disputed facts therefore preclude summary judgment on

25 | qualified immunity grounds.

26 | ////

27 |

28 | that plaintiff has assaulted another inmate, such that the nature of his sex offense might make him
a target.

12

F.    Conclusion

For the reasons set forth above, defendants' motion for summary judgment should be granted on the ground that defendants did not violate plaintiff's First or Eighth Amendment rights when they told other inmates he was a "snitch on staff" and the court declines to address defendants' qualified immunity arguments as to these claims.  However, summary judgment should be denied as to the claim that defendants retaliated against plaintiff by threatening and harassing him over a two-month period after he settled a lawsuit against other officers.

IV.    Plaintiff's Motion for Reconsideration

Plaintiff has moved for reconsideration of the order denying his motion for a preliminary injunction.  ECF No. 137.  The motion does not identify any new or different facts or circumstances demonstrating that the motion for a preliminary injunction should be granted.  See L.R. 230(j)(3)-(4) ("what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion; and . . . why the facts or circumstances were not shown at the time of the prior motion.").  Moreover, in light of the recommendation that defendants' motion for summary judgment be granted, plaintiff cannot establish he is likely to succeed on the merits.  See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits").  The motion for reconsideration should therefore be denied.

V.    Plaintiff's Motions for Trial and Final Judgment

Plaintiff has filed multiple motions for a trial and final judgment in his favor.  ECF Nos. 138, 139, 141.  These motions will be summarily denied.  Trial setting will follow in due course pursuant to the Federal Rules of Civil Procedure, the Local Rules of this court, and the operative scheduling order in this case.

VI.    Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendants' motion for summary judgment be granted as to your retaliation and failure to protect claims based on defendants calling you a "snitch on staff," because you have not shown that this label put you at risk of harm from other inmates.  It is being

13

1    recommended that the motion be denied as to the claim that they retaliated against you by

2    harassing you and threatening you for two months after you settled your case against HDSP staff.

3          Accordingly, IT IS HEREBY ORDERED that:

4          1.  Plaintiff' motion to strike (ECF No. 131 at 1, 7) is DENIED; and

5          2.  Plaintiff's motions for a trial and final judgment in his favor (ECF Nos. 138, 139, 141)

6    are DENIED

7          IT IS FURTHER RECOMMENDED that:

8          1.  Plaintiff's motion for reconsideration of the order denying his motion for a

9    preliminary injunction (ECF No. 137) be DENIED;

10         2.  Plaintiff's motion for leave to file a motion for summary judgment and motion for

11   summary judgment (ECF No. 140) be DENIED;

12         3.  Defendants' motion for summary judgment (ECF No. 126) be GRANTED in part and

13   DENIED in part as follows:

14              a.  GRANTED as to plaintiff's First and Eighth Amendment claims based on the

15                  allegation that defendants told other inmate he was a "snitch on staff;" and

16              b.  DENIED as to plaintiff's First Amendment claim that defendants retaliated against

17                  him by threatening and harassing him for two months after he settled a lawsuit

18                  against other officers.

19         These findings and recommendations are submitted to the United States District Judge

20   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen days**

21   after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  **Due to exigencies in the**

24   **court's calendar, no extensions of time will be granted.**[12]  The parties are advised that failure

25   ////

26

27   [12]  Plaintiff is informed that in order to obtain the district judge's independent review and
     preserve issues for appeal, he need only identify the findings and recommendations to which he
28   objects.  There is no need to reproduce his arguments on the issues.

1  to file objections within the specified time may waive the right to appeal the District Court's

2  order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: March 10, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE